1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ALANA MARIE KOUT, | 1:10-cv-0214 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

11

12

13

14

15

16

17

18

19

## **BACKGROUND**

20

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21

"Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB")

22

and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act.

23

42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs,

24

which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

25

Magistrate Judge.[1]

26

27

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 11, 12.)  On April 8, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

28

1

**FACTUAL BACKGROUND**

Plaintiff was born in 1958, completed the twelfth grade, and previously worked as a collector and home attendant. (Administrative Record ("AR") 22, 30, 128.) On June 5, 2007, Plaintiff filed applications for DIB and SSI, alleging disability beginning on June 30, 2006, due to mental problems. (AR 77, 128-39.)

**A.    Medical Evidence**

**1.    State Agency Physicians**

On September 14, 2007, R.B. Paxton, M.D., completed a psychiatric review technique form in which the doctor opined that, as a result of her affective disorder, Plaintiff had (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation, each of extended duration. (AR 261, 264, 269.)

On that same date, Dr. Paxton also assessed Plaintiff's mental residual functional capacity ("RFC").[2] (AR 272-76.) Dr. Paxton opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public. (AR 272-73.) According to Dr. Paxton, Plaintiff had the capacity to understand, remember, and perform simple tasks and instructions, and could work with peers and supervisors, but not with the public. (AR 274.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 53-

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

2

85, 90-103.)  On June 23, 2009, ALJ Michael J. Kopicki held a hearing where Plaintiff and a

vocational expert ("VE") testified.  (AR 26-52.)

**1.    Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in his decision as follows:

> [Plaintiff] alleged that she has a hard time staying focused and cries for no reason.  She reported that she has difficulty sleeping and staying asleep, with about 7 episodes of wakefulness a night. [Plaintiff] reported that she has a hard time staying focused and jumps around in conversation. [Plaintiff] alleged she experiences severe anxiety attacks.

> [Plaintiff] testified that sometimes she just does not want to get out of bed or communicate.  She just does not want to do anything. [Plaintiff] testified that she has a hard time just getting out of the door and that other people make her nervous.  She has gained a lot of weight as a side effect of her medications, and does not feel very good about herself.  She testified that she does not want to be around friends anymore and has not seen them for years. [Plaintiff] testified that she used to have arts and crafts hobbies but has not done any in a long time.  She testified that she watches television but has a hard time watching a whole television show, and does not read books as her eyeglasses do not work that well and she has a hard time concentrating on what she is reading. [Plaintiff] testified that she does not associate with family members socially at events or cookouts.  [Plaintiff] testified that she can concentrate on a book or task for 15-20 minutes and she can focus again after a 10-20 minute break.

> [Plaintiff] testified that she has suicidal thoughts "too often" – a couple [of] times a month – and sometimes she will stay in bed for a couple of days.  She testified that the last time that happened was 2-3 weeks ago.  She testified that she has to force herself to go out and be around people.  [Plaintiff] testified that her depression is worse when she is around her brother but sometimes she just wakes up that way and has trouble taking care of her daily activities.

> . . . .

> Currently [Plaintiff's] living situation has changed and she no longer has to deal with the stressors of [her] chaotic home life . . . .  She testified that she has not used drugs in over a year, except for a one day relapse with methamphetamine 3-4 months ago, and she no longer is with the same boyfriend. [Plaintiff] testified that she has a dog that has helped her a lot by giving her love and snuggling her when she needs it.  He helps her get out of the door.

> [Plaintiff's] current medication regimen includes Lamictal 200 mg per day; citalopram 20 mg per day; diazepam 15-30 mg per day, and she testified that she now has access to regular medications through a pharmacy program.  [Plaintiff] also testified that she has continued to be involved in counseling and has benefited [sic] from it, though some of the classes she was taking through the county were dropped because of a lack of funding.

(AR 20-21 (internal citations omitted).)

**2.     VE's Testimony**

The VE testified that Plaintiff's past work as a collector was light[3] and semi-skilled and her past work as a home attendant was medium[4] and semi-skilled. (AR 48-49.) A hypothetical person of Plaintiff's age, education, and work experience who is limited to simple, routine work not involving serving the public could not perform Plaintiff's past work, but could perform other jobs such as a library page, cleaner, and horticulture worker. (AR 50.) Such a person could not perform any work if that person additionally could focus and attend to tasks in fifteen-minute increments before needing to take breaks. (AR 51.) Further, such a person could not perform any work if that person would miss work three to four days a month because of psychological symptoms. (AR 51.)

**3.     ALJ's Decision**

On September 23, 2009, the ALJ issued a decision finding that Plaintiff was not disabled since June 30, 2006. (AR 12-24.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since June 30, 2006, the alleged onset date of disability; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform her past relevant work; but (5) was able to perform other jobs that exist in significant numbers in the national economy. (AR 17-23.)

The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with a limitation to performing simple, routine tasks not involving contact with the public. (AR 19.) In so finding, the ALJ noted that "[t]he State agency evaluators opined, based on

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) , 416.967(b).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner determines] that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

[Plaintiff's] medical record, that [Plaintiff] could perform simple repetitive tasks with limited public contact." (AR 22.) The ALJ gave "significant weight to these opinions as the State agency medical consultants are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended." (AR 22.) The ALJ found that there were no medical opinions in the record that conflicted with the opinions of the State agency. (AR 22.)

As for Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." (AR 20.) The ALJ found that his RFC assessment was supported by Plaintiff's testimony that her living situation was more stable and by the treatment record that demonstrated that Plaintiff's mood responded to her medication regimen. (AR 22.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on December 2, 2009. (AR 3-6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**C.    Plaintiff's Appeal**

On January 25, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in evaluating the medical evidence and in finding that her testimony was less than fully credible.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

1   evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

2   909, 911 (9th Cir. 2007).

3   "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

4   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

5   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

6   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

7   U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the

8   evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

9   not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

10  504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

12  An individual is considered disabled for purposes of disability benefits if he is unable to

13  engage in any substantial, gainful activity by reason of any medically determinable physical or

14  mental impairment that can be expected to result in death or that has lasted, or can be expected to

15  last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

16  1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or

17  impairments must result from anatomical, physiological, or psychological abnormalities that are

18  demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

19  such severity that the claimant is not only unable to do his previous work, but cannot, considering

20  his age, education, and work experience, engage in any other kind of substantial, gainful work that

21  exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

22  The regulations provide that the ALJ must undertake a specific five-step sequential analysis

23  in the process of evaluating a disability. In the First Step, the ALJ must determine whether the

24  claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).

25  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

26  or a combination of impairments significantly limiting him from performing basic work activities.

1  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

2  claimant has a severe impairment or combination of impairments that meets or equals the

3  requirements of the Listing of Impairments (the "Listings"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

4  §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

5  has sufficient RFC despite the impairment or various limitations to perform his past work.  *Id.*

6  §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that

7  the claimant can perform other work that exists in significant numbers in the national economy.  *Id.*

8  §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

9  sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

10  (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ's Consideration of Plaintiff's Credibility**

13     Plaintiff contends that the ALJ erred in rejecting her testimony.  Defendant maintains that

14  the ALJ provided legally sufficient reasons for finding Plaintiff's testimony less than fully credible.

**1.     Legal Standard**

16     In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must

17  engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ

18  must determine whether the claimant has presented objective medical evidence of an underlying

19  impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*

20  The claimant is not required to show that her impairment "could reasonably be expected to cause the

21  severity of the symptom she has alleged; she need only show that it could reasonably have caused

22  some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets

23  the first test and there is no evidence of malingering, the ALJ can only reject the claimant's

24  testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons"

25  for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for

1    lying, prior inconsistent statements concerning the symptoms, and other testimony
2    by the claimant that appears less than candid; (2) unexplained or inadequately
     explained failure to seek treatment or to follow a prescribed course of treatment; and
3    (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial
     evidence, the court may not engage in second-guessing.

4    *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks

5    omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009);

6    20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work

7    record and testimony from physicians and third parties concerning the nature, severity, and effect of

8    the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

9            **2.      Analysis**

10           In this case, the ALJ found that Plaintiff's medically determinable impairments could

11   reasonably be expected to produce the alleged symptoms.  (AR 20.)  Therefore, absent affirmative

12   evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and

13   convincing.

14           Defendant maintains that the ALJ found that the objective medical evidence did not support

15   Plaintiff's alleged limitations.  According to Defendant, Plaintiff testified that she could concentrate

16   for fifteen to twenty minutes, yet she participated in group therapy sessions regularly.  Further,

17   Defendant contends that, despite Plaintiff's claims of disabling mental impairments, treatment notes

18   showed normal mental status examinations and that Plaintiff's mood became more stable over time.

19           The ALJ, however, did not state these reasons in finding Plaintiff not entirely credible.  The

20   Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons

21   that the ALJ asserts.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  The Court cannot

22   make findings for the ALJ.  *Id.*  Moreover, the Court cannot affirm the ALJ's decision on a ground

23   that the ALJ did not consider in making his decision.  *See Pinto v. Massanari*, 249 F.3d 840, 847

24   (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not

25   invoke in making its decision."  (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).

26

27

28                                          8

1   The ALJ found that Plaintiff's symptoms responded to a medical regimen and improved with

2   treatment.  Although "[i]mpairments that can be controlled effectively with medication are not

3   disabling for the purpose of determining eligibility for . . . benefits," *Warre v. Comm'r of Soc. Sec.*

4   *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006), the ALJ did not find that Plaintiff's condition would

5   improve with medication to such an extent that Plaintiff could concentrate for more than fifteen

6   minutes and be able to perform work in the national economy.  Accordingly, the ALJ did not

7   articulate specific, clear and convincing reasons to discount Plaintiff's credibility.  The Court,

8   therefore, remands this case to the Commissioner to clarify the ALJ's credibility determination.  In

9   light of the Court's disposition of this case, the Court need not address any other issues raised by the

10  parties.

11  **B.      Remand Is Required**

12         "The court shall have power to enter, upon the pleadings and transcript of the record, a

13  judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

14  with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In Social Security cases,

15  the decision to remand to the Commissioner for further proceedings or simply to award benefits is

16  within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If

17  additional proceedings can remedy defects in the original administrative proceedings, a social

18  security case should be remanded.  Where, however, a rehearing would simply delay receipt of

19  benefits, reversal [and an award of benefits] is appropriate."  *Id.* (alteration in original) (internal

20  quotation marks omitted).

21         The Court has concluded that the ALJ erred in failing to give specific, clear, and convincing

22  reasons for rejecting Plaintiff's testimony.  In these circumstances, it is appropriate to remand this

23  matter for further administrative proceedings.  "Remand for further administrative proceedings is

24  appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593

25  (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where there are

26  outstanding issues that must be resolved before a determination of disability can be made, and it is

27

28                                              9

not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178.  Here, remand is appropriate because the ALJ must properly address Plaintiff's credibility before a proper disability determination can be made. *See Vasquez*, 572 F.3d at 593.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Alana Marie Kout and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   May 16, 2011**                    _____/s/ Sheila K. Oberto_____
                                            UNITED STATES MAGISTRATE JUDGE

10